Case 15-1331 U.S.A. v. Rasmieh Odeh Oral argument, 15 minutes per side, Mr. Deutsch for the appellant May it please the court, my name is Michael Deutsch and I rise on behalf of the appellant Rasmieh Odeh, a Palestinian woman who received her naturalization citizenship in 2004. I'm going to reserve 3 minutes for rebuttal Ms. Odeh was convicted under a statute charging her with procuring her naturalization contrary to law. Specifically she was indicted and the entire prosecution of this case was based on the premise that she provided material misrepresentations in her answers and her naturalization process for the purpose of obtaining immigration benefits. In other words, she was charged with providing false information for the purpose of procuring her naturalization. The rulings of the trial court below denied Ms. Odeh a fair trial. Specifically, she was precluded from presenting her complete defense under the 5th and 6th amendments of the Constitution when the trial judge precluded her expert witness from testifying about her diagnosis of having chronic post-traumatic stress disorder and precluded Dr. Fabry one of the leading experts internationally on the treatment of post-traumatic stress and the treatment of survivors of torture and the judge said she could not testify because the charge was a general intent crime and not a specific intent crime and then looked to two major opinions by this court, Gania and Keams which basically says that you can never use expert testimony, expert psychological testimony in a general intent crime. Now, the expert in this case was going to testify as to evidence that was relevant, directly relevant to the mens rea required for the government to prove and the evidence would have been to negate the mens rea so it was particularly relevant to determine whether or not she knowingly, intentionally willfully provided false material misrepresentations in order to procure her naturalization. The question is why would anybody lie other than for the purpose of the law is clear that if you lie for a purpose or a bad reason that is a specific intent crime. So if we look at the Supreme Court opinion in Cungies v. U.S. which is the sister statute, it's a civil denaturalization statute and the Supreme Court has said in that statute that the mens rea element to require, which is required to denaturalize a person is concealment or misrepresentation, willful concealment or misrepresentation. They're very clear about that although the Cungies opinion had various parts, seven of the judges said specifically you had to show a willful act and willful of course we know is a specific intent crime. So the judge initially found that it was a specific intent. So you're saying that even though the language of the crime with which she is charged is knowing, not willful, we should read knowing to mean willful because of the civil statute? Well I think what we have to do is look at the purpose of the statute, not only the language but the even though it uses knowingly, I would point out to the court its own opinion in United States v. Childbury which is another immigration case which said somebody knowingly married to obtain immigration benefits, they read into that willfully, specifically it said we will decide that knowingly means willfully acting to What I'm saying is you not only look at the language but you also look at the policy, the practice and you have to look at the Supreme Court opinion in Cungies because why would the Supreme Court say it has to be willful, a material representation has to be willful in a civil denaturalization but in a criminal denaturalization a criminal case it says that the standard intense standard is knowingly, it makes no sense because you automatically if you're convicted under the criminal statute you automatically lose your citizenship, that's in the civil statute, if you're convicted under 1425 you automatically are denaturalized under AUSC 1451E so it makes no sense to have a lesser criminal standard where you not only lose your citizenship automatically but you can go to federal prison and of course several circuits have found that Cungies, the elements of Cungies in a criminal manner require under 1425 a willful state of mind. Can I ask a question just to clarify a little bit as I understand this difference between this generally speaking between a specific intent and a general intent crime is in general intent you have to have a certain mens rea to commit the crime, the question is whether you did it for a purpose that you knew was illegal. Correct. But your PTSD expert is going to testify whether she committed the crime not whether she thought the purpose was illegal so that's why I'm wondering why we can't just put all this specific versus general intent aside because both I think you and your opposing counsel agree that there has to be a showing that she knew it was false. That's right judge and in fact. So I mean you're arguing now about whether you had to show or not something more than that but the evidence that you're trying to get in goes to whether she committed the crime without respect to the purpose. Well we're saying that obviously anybody that lies to procure their naturalization is lying for the purpose of getting your naturalization. But are you claiming that she wasn't lying because of the PTSD she didn't actually have a grasp of the facts? What we're saying is that the PTSD causes a disassociation or an avoidance so she filtered out her past criminal history which was so traumatic when she answered the questions there was a blockage and she didn't actually consciously lie because she didn't recall that because she was operating under this filtering process which narrowed her interpretation of the questions. That doesn't go to why she did it it goes to whether she did it. I agree with you. It does then all of this specific versus general is sort of beside the point. The reason that we get into it is because of this position that you can't call a psychological expert unless it's a specific intent crime. But if you look at the jury instruction that was given to the jury unknowingly it says that the defendant made a false statement knowingly. A false statement is made knowingly if when the defendant made the false statement she knew it was false and made it voluntarily and intentionally and not because of mistake or some other innocent reason. You really would need some kind of brilliant expert to convince a jury that answering a question have you ever BOLD all caps and probably but it's disputed the person who asked the question orally said anywhere at any time. That's disputed. That a person asked that question who has in fact and knows consciously that that is the truth that that has happened would just answer no. You'd have to say well is that analogous to somebody who has asked a question in a foreign language and didn't understand the context or something like that. I guess I'm asking a question that goes in your favor. If you're going to say yes which is what you're talking about you're going to have to have a pretty powerful expert. Well the expert was powerful and we believe we had the right to put that expert before the jury and by the way. However unlikely it is. Well who knows. Well we can't decide what a jury would believe. That's the whole point. The point is if the testimony is relevant if it goes to an issue of the state of mind of the defendant then we're entitled to put it on. The state of mind that it goes to is whether she was knowing the truth. She knew what she was saying was false when she said it. Right. You don't object to those instructions on knowingly false. Did you object? No. We of course wanted a willful instruction but we were denied that because the judge said the statute doesn't have a willful intent. But we didn't object to this instruction and we think that with this instruction and the expert testimony and her testimony don't forget the judge precluded her from testifying about her state of mind about why she had all these problems over the years because of the torture she experienced that she had post-traumatic stress. And it is hard for a delayed jury to understand that. That's why you need an expert who can explain how post-traumatic stress works. Well I guess I was going to ask whether you would be saying then that this panel would have to essentially overrule or rule differently from the court in Kimes. I think if you were going to say that this is a general intent crime, which I still think it's a specific intent crime because of Congies and because it's for the purpose of, that you could distinguish Kimes and Ganya because those were, the actus reus of those crimes were physical. Somebody robbed a bank, somebody assaulted somebody and they said they had an irresistible impulse to act that way. Yeah, they just said they had an irresistible impulse to do it. That's completely different from her case. Her case is all state of mind. The issue is what was her state of mind when she answered those questions. So it is distinguishable. You wouldn't have to change those rules. Yeah, but I don't think that's what I think is significant. The woman that did the interview asked her anywhere in the world, did you ever commit a crime anywhere in the world? And she said she did this for every case. She didn't remember this case. She didn't remember the defendant in this case. But she did not say at any time. At any time may have pierced this blockage that she had. For example, when she came back to this country, she was traveling abroad in 2013, they put a homeland security officer to interview her. And the homeland security officer said, well you spent ten years in prison in Israel, didn't you? And she said, yes I did. If they would have asked her were you ever in prison in Israel, were you ever convicted of a crime in Israel, she admitted it. It was no secret. So how does that, why doesn't that undermine your claim that the PTSD made it so that she couldn't answer that question accurately? Because when she was confronted with those questions on the naturalization form, it did not say were you ever convicted of a crime in Israel, were you ever in prison in Israel. That would have filtered that blockage that PTSD occurred. And she would have answered it truthfully and obviously if she would have answered it truthfully, that would have set a whole other series of issues and maybe she would not have gotten her naturalization. And that is a question that could have been asked of an expert. And the expert could have been cross examined as to that. Counsel, if you want to retain your reserved minutes, you'll see that your red light is on. Oh, I'm sorry, yes. Judge Rogers has a question. Assume that the district court, and I'm not saying we would hold this, but assume that there was a way to distinguish time in that other case that they relied on and that the district court erred in saying categorically we're not going to consider this. What would be the relief we would order in that kind of a situation? It would be a new trial in which... A new trial? Would there be other objections to the testimony? Daubert and all of that kind of stuff? Well, apparently we did have a hearing, a 104 hearing with the expert and she testified extensively, but before... But they didn't rule on that. Right. It could go back for the... We could just go back and say make any rulings that have to do with whether this is admissible and if you still come to the conclusion that it's admissible. Then you get a new trial. No, if you still say that it's not admissible for other reasons, then what would happen? Then they would just re-enter the judgment, right? Yeah, but don't forget it also applies to her own testimony too. Her own testimony was very much limited by the judge. He admonished her, he told her she couldn't say what happened to her in torture, that she couldn't say the effects of it on her state of mind. She couldn't obviously... It wouldn't be expert testimony. No, it wouldn't be. It would be the defendant's own testimony, which is very critical. That would sort of go to whether you sympathize with her as opposed to whether she knew that it was false. Well, there's a... If you had to show that she knew that it was false, you'd have to have a... The only way you could reasonably get around it is to have a psychologist or a psychiatrist say those words didn't mean that to her. I think you're right. Without the expert, it would really undercut her own testimony. You needed the expert to explain her testimony. But you did need her testimony as well. But I do agree with you that the expert is... So that if, for some other reason, the expert's testimony were excluded, not having been reached by the district court, the district court could say, for a reason why I'm excluding that testimony, then you wouldn't need a new trial in that situation. Is that correct? You're right. I don't know what reason that would be. Well, I don't either. That's why... But I mean, that's certainly a conditioned precedent to the witness taking the stand. I agree with you there. Thank you. May it please the court, Jonathan Tuckle on behalf of the United States. I'd like to go directly to a question that Judge Rogers asked, because I think it illustrates the issue here, which is that the defendant wanted to offer this psychological testimony to negate the element of knowingly, whether she understood the question and intentionally gave a false answer to it. And as a matter of law, that sort of testimony is inadmissible. The most persuasive authority, which we've cited in our brief, is this court's opinion in Willis. We've cited two cases called Willis. It's the 1999 opinion in Willis. And in that case, the court drew a careful distinction between using expert testimony to negate the specific intent element of a heightened mens rea. And so, whether or not we import the willfully language, which, by the way, doesn't appear anywhere in 1425, into that statute, the element, the specific element that the defendant wanted to rebut was the knowingly element. And that's just inadmissible as a matter of law. I just don't understand that. Well, in Willis, the court said, and I'll just... What if there's a crime that you took a book knowing it belonged to somebody else? You can't have an expert witness saying he had a mental block as to the meaning of those words, or a language expert saying in his native tongue those words mean something else. No, I think you could have... You could have that, and that would go to whether he knew what he was saying was false, even though his words were actually uttered. That's correct. But the distinction the court has drawn is there is evidence that's permissible to rebut that, and the defendant offered some of it. She testified in her own testimony. Right, but they want to prove or create reasonable doubt as to whether she knew this testimony was false when she uttered the word no. She uttered the word no, that's her false statement, right? Correct. And her false statement is no to a question. If an expert could say her mind interacting with that question in that language on that date didn't register the facts that would lead you to say no or yes, then that would go to whether she knew she was lying. Well, it could go to that. That's the nature of their argument. The expert didn't actually go that far at the evidence you're hearing. She said it could possibly. The judge didn't make that determination. The judge just said this is categorically not admissible because it's a specific intent crime based on these cases which seem to be distinguishable. Yes, except that Willis then says the proper analysis is to look element by element. Willis, you're referring to the 1999 case, which is an unpublished order in a Rule 34 case. That's not a binding precedent. Correct, but I believe that the logic of it is persuasive, Your Honor. I agree. It's not binding in that sense. And the court carefully analyzed and said you look element by element, which is consistent with what the Supreme Court said in Bailey, because in Bailey the court said you have to analyze the mens rea element by element, not offense by offense. And so the particular element we're talking about here is the knowingly element, and that is not a heightenment. And we can't have expert testimony as to whether somebody knew? That's the interpretation that this court and other courts have given post-Insanity Defense Reform Act that that type of testimony is not admissible. Congress only allowed a narrow exception, other than the use of... Under the Reform Act? Yes. Your argument at this stage just relies on the Reform Act? Well, in part it does, but post the Reform Act, which... Did the District Court rely on that? District Court relied on these cases, which seem different. Well, the District Court relied on those cases, which themselves are an interpretation of the statute, the narrow exception which is left. There was a significant argument following passage of that statute whether any of this type of psychological evidence would be admissible. I thought that statute, in essence, but I'm not an expert on that statute, and these cases which are or are not distinguishable, had to do with the common sense idea that if there's an additional requirement to prove, and that additional requirement doesn't make any difference because it's a general and unique crime, then you don't need, then you can't have evidence on that additional requirement because it's not a requirement. Well, they do say that. That's the idea. They do say that, but then the application in Willis is where a defendant's... The unpublished order? Correct. This is where... Is there anything which argues that? Because it seems counterintuitive. Well, it seems like with respect to the crime as to which you might say you were deluded into thinking you were allowed to do it or something like that, which is what the insanity defense is all about. You were talking about whether it was actually committed or not. Lying. Lying to the government is basically what it is. Lying to the government, and if in her mind she's not lying to the government, it's hard to believe, but if true, then she hasn't met the requirements of the statute. That's true, but the cases limit the type of evidence and psychological evidence of this alleged... Why would they? What's the underlying reason for having that evidence? The underlying rationale going back to Kimes and other cases from this court... But Kimes is talking about that extra element that's not there. Correct, and so the language of the statute says other than insanity, psychological evidence is not a defense, and so the analysis was it's not really a defense when you try and negate a heightened mens rea because it's simply tending to disprove the government's ability to carry its burden, so it's not truly a defense. The burden is not on the defendant. The burden of persuasion is not on the defendant, but that's limited to those heightened mens rea statutes where that would be relevant. That was the interpretation. Why would anyone lie except to procure naturalization? I don't understand this debate as to whether it's general intent or specific intent because I can't conceive of why someone would lie other than to procure naturalization. Because, Your Honor, sometimes people lie because they misjudge what the law is and there's an embarrassment factor. So let's take an example. Someone who within the five years prior to seeking naturalization goes to a dollar store on two different occasions and shoplifts a one dollar item. Let's say they're prosecuted both times for that. So there's no misdemeanor exception because it's two convictions for a dollar each. We'll just assume they're prosecuted and convicted. And in their own mind, they calculate that that's so unimportant, it's so de minimis, that it couldn't possibly affect the immigration process. But they decide because it would be embarrassing to them. They don't want their children to know. They don't want their neighbors to know. Whatever reason, they decide they're not going to disclose that, perhaps because they miscalculate what the law is, thinking that will not make me ineligible. But in fact, they would be ineligible because those are aggravated felonies, or I'm sorry, crimes involving moral turpitude, and they therefore procure their naturalization unlawfully. They have done so by knowingly providing false information to the immigration authorities. They do it not thinking it's going to affect the immigration process, but in fact it does. There's no reason to think that when Congress used the word knowingly, it doesn't use the word willfully in that statute, it uses the word knowingly, that it viewed that somehow, that possibility as being able to capture otherwise innocent behavior, and we need to wall that off to make sure that people who engage in that don't get caught up in that trap. There's no innocent behavior by intentionally submitting false information for immigration forms, repeating that information under oath to an immigration officer, and then naturalizing, whether you thought it was going to affect the process or not. Can I ask a follow-up to that? Yes. That makes sense to me. If this were that kind of case, it would make sense that we would be here and having to debate whether this is a specific or a general intent crime, because you lay out fairly clearly a case where you might have general intent, but not and more analogous to a situation where you might have a doctor who wants to testify that this person had amnesia for the period of June 1 to August 1 of 19XX, and therefore did not have any memory of that shoplifting at the time the person was asked. So when the person was asked, the person told everything that was left in his mind. Not, I did it, I know I'm lying, but I have these wrong reasons for lying, but I'm not lying. Does that distinction make any sense to you? Well, it does and it doesn't. That was not the testimony that the expo was about. I know, but it's more analogous to someone who has amnesia than it is to someone who knows that they did the crime, but thinks it was okay or that Mad Magazine was telling me to do it or something. It's just not, if you're dividing along that line between whether it's the mens rea for the elements of the crime as opposed to the purpose to violate the law additional aspect, which what you're talking about gets to, it falls on, it just seems, it's hard to believe, I grant you, but it falls on that side of the line. And there's other reasons it's even harder to believe, but they don't. Well, but those could be developed on remand it seems to me, whereas here you just have a categorical we're going to exclude it because of all of this specific versus general intent, which doesn't seem to. But the problem is when you look at what that testimony seemed to be, because as the court noted, we never finished the evidentiary hearing. But if you look at what that was. You shouldn't get your evidentiary hearing. It's, I believe, actually evidence that would have gone to insanity because she's not saying that she didn't know the truth. She's saying, I knew the truth, but I didn't answer the truth. And so what that means is that at that moment. Her mind changed the nature of the question. Correct. Which means that under the definition. To me, it's analogous to a translation error. The problem, I think, Your Honor, is that under the definition of insanity that the Insanity Defense Reform Act codified at 18 U.S.C. Section 17, a person is insane if they are unable to appreciate the nature and quality of her acts or the wrongfulness of her acts. And so what she is really saying, or what the expert would say is, she did not understand the nature or the quality of her acts. She did not understand that what she was doing was actually answering falsely. And if that's what she's doing, the Insanity Defense Reform Act provides the exclusive mechanism by which she can bring that forward. And I think it proves the point about the knowingly because the only way that the courts have approved to negate knowingly is through the use of an insanity defense. She chose not to invoke the insanity defense. She objured it. It's very clear in her reply brief. And if what that is, is actually the legal defense of insanity, then it means she can't try to do it this other way because if it meets the definition of insanity under the statute, she has to proceed under the statute. Unless the court has... Do you, as the government, need to assert specific predicate acts that make this a knowingly false statement to procure naturalization? Under the standard that the Second Circuit, the Fourth Circuit, and the Ninth Circuit adopted, which is what the District Court in SNV Carthage back in 1983 said is a knowingly standard, yes, we need to show that she made a false statement knowing it to be false. And that's clear from a number of facts in the record. Not the least of which is she answered no to the question of whether she had ever been in prison. And it's clear beyond all the documentary evidence, it's clear beyond the fact that the government exhibit 11, which was an excerpt of a video that she appeared in voluntarily the year that she naturalized, in which she discusses her experiences in prison and talks about it. So as this is going on, when she allegedly can't recall the facts of what took place in her life, she's appearing on a video talking about it. But that's not what they're saying. What they're saying is because of her PTSD, she simply didn't interpret the question as meaning anywhere other than in the United States have you ever been imprisoned. Which is very different from your saying she knew perfectly well she'd been in prison. They're not saying she didn't know that. They're saying she didn't know that's what was being asked because she somehow filtered all of this out because of her past experiences. Correct. And I agree that is what they're saying. And I would simply have to return to the definition of insanity under 18 U.S.C. Section 17, which means she did not understand the nature and quality of the acts which constitute the crime, which is the false statement. Because she doesn't dispute that the answer was false, understanding that it covers anywhere in the world. She disputes that she knew it to be false. But if that's the case, she did not understand the nature and quality of her acts in answering. And Thank you. Thank you. This is not an insanity case. She has a mental disorder, post-traumatic stress. And if you look at the amicus brief, you'll understand that this is a disorder that affects your mental state and you associate and block and filter out the traumatic events that causes you to answer the question. And you're exactly right, Judge. She interpreted the questions in the narrow sense to apply to the United States. But she's obviously pretty selective in how she filters. Well, I don't think so. I think that when she's in a situation where she's being asked these questions, it's not a conscious thing. It's unconscious. That's how it works. She's not consciously thinking, oh, I'm going to not answer this this way now and answer it another way this way. It happens automatically. And that's what the expert would have testified to. And that's what we were precluded from putting before the jury. Can you address the statute? His Well, the cases that interpret in this circuit, which is Kimes and Garnier, those are two published cases, not this unpublished opinion. Under the statute? They interpret the statute to allow for only in specific intent crimes can you call a psychological expert. But as we talked about, those cases are to commit the physical act of a bank robbery. You're saying that the statute doesn't go to elements of the crime that are different from... Actus Reis. Yeah. Physical acts. These are state of mind. How do you reconcile the language with that limitation? I look at the... I read those opinions and I see that they don't apply to... You're distinguishing those cases. I'm asking about the language of the statute. The statute doesn't speak to that at all. The statute leaves it open as to in what circumstances you can use a psychological expert. It does not preclude... And then there's cases interpreting that statute in that way. But if you read the statute, I don't think you come away saying, oh, when somebody's state of mind is at issue. Yeah. I don't think so. And this is why we go back to this. This is a specific intent crime. It is a specific intent crime. That gobbledygook that he offered about when someone would lie and what circumstances would they lie other than to procure their naturalization. That's what the statute says. For the purposes of procuring your naturalization, you materially provided false answers. That's what the indictment says. Specifically, the indictment charges her with lying for the purpose of obtaining immigration benefits. That's what they indicted her for. That's what they tried her for. The whole case was about lying for the purposes of getting her naturalization. That's classic specific intent. And what is Cungie's? What was Congress thinking if they were going to make a civil denaturalization with willful and then take the same effect plus criminal imprisonment and say that that's knowingly? And I suggest finally that you should read, again, I'm sure you have Crowd Hurry, 169 Fed Second, which was knowingly in the statute and the court interpreted that to mean willfully acting to obtain immigration benefits. So the words knowingly, the reason that we're hung up on knowingly, and I agree with you, Judge Rogers, it's a false dichotomy. Well, because thank you. Thank you. Thank you, counsel. The case will be submitted. There being nothing further to be argued this morning, we may adjourn the court.